UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDIN LEE MARTIN,<br><br>                             Plaintiff,<br><br>        v.<br><br>J. HURTADO, Correctional<br>Officer; C. BUGARIN,<br>Correctional Officer; J. J.<br>AGUIRRE, Correctional<br>Sergeant,<br><br>                            Defendants. | Civil No. 07cv0598 BTM (RBB)<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS THE<br>COMPLAINT [DOC. NO. 13]** |

Plaintiff Randin Lee Martin, a state inmate proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on April 2, 2007 [doc. no. 1].  Martin alleges that on September 26, 2005, Defendants J. Hurtado and C. Bugarin, both correctional officers at Calipatria State Prison, violated Plaintiff's First Amendment right to freedom of speech by confiscating his television in retaliation for an inmate grievance he had filed against another officer.  (Compl. 3.)[1]  Plaintiff's

_____

[1]  The pages of the Complaint are not consecutively numbered. Accordingly, for convenience, the Court will refer to the page numbers supplied by the electronic case filing system.

Complaint further alleges that Defendant J. J. Aguirre, in denying the grievance Martin filed against Hurtado and Bugarin for confiscating his television, violated Plaintiff's Fourteenth Amendment "administrative disciplinary due process protections in knowing disregard of the fact that Plaintiff's constitutional rights were violated." (<u>Id.</u> at 6.)

Defendants filed a Motion to Dismiss the Complaint [doc. no. 13] on February 15, 2008, with a Memorandum of Points and Authorities in Support of the Motion.  Defendants argue the current action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.  (Defs.' Mem. P. & A. 2.)  They contend that Plaintiff fails to state a First Amendment retaliation claim against Hurtado and Bugarin because the officers had a legitimate penological reason to seize Martin's television.  (<u>Id.</u> at 5-6.) Additionally, the Complaint does not allege that these Defendants actually chilled Plaintiff's First Amendment rights.  (<u>Id.</u> at 7.) Defendant Aguirre claims that he cannot be held liable for a First Amendment claim under a theory of supervisory liability.  (<u>Id.</u>) Lastly, Defendant Aguirre argues the Complaint fails to allege a due process claim against him because Plaintiff does not have a due process right to administrative grievance procedures.  (<u>Id.</u> at 8.)

On June 16, 2008, Martin filed a Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss [doc. no. 19], along with a Request for Judicial Notice and a Declaration with four supporting exhibits.  The Court found the Motion was suitable for resolution without oral argument pursuant

to Civil Local Rule 7.1(d)(1).  (Mins. Apr. 18, 2008 [doc. no. 18].)  For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART.**

### I. FACTUAL BACKGROUND

Plaintiff is currently incarcerated at Calipatria State Prison.  (See Compl. 1.)  He was transferred to Calipatria on September 26, 2005, from Corcoran State Prison.  (Pl.'s Opp'n 3-4.)  Martin had a thirteen-inch color television which was transferred to Calipatria with him.  (Id. at 4-5; Compl. 3.) Before he was transferred, the television was inspected by officers at Corcoran who determined that it was in compliance with institutional regulations.  (Pl.'s Opp'n 3-5.)

Correctional Officers Hurtado and Bugarin processed Plaintiff and his personal property upon arrival at Calipatria.  (See Pl.'s Opp'n 4; Compl. 3.)  Martin contends that while searching his legal property, Defendants Hurtado and Bugarin discovered a large manila envelope which contained correspondence from Plaintiff to the California Inspector General's Office in which he complained about an assault committed by another correctional officer. (Compl. 3-4; Pl.'s Opp'n 4.)  Although the material was clearly marked "Confidential," Hurtado and Bugarin read the grievance and thereafter became "openly hostile" toward Martin.  (Compl. 3.) Plaintiff alleges they seized his television for the purpose of retaliating against him for filing an administrative grievance alleging misconduct by another officer.  (Id.)  Defendants Hurtado and Bugarin claimed that they seized the television because it was in violation of regulations because the glue seals had been tampered with.  (Id. at 5; Pl.'s Opp'n 6.)

Martin filed an administrative grievance against Defendants Hurtado and Bugarin which was reviewed by Defendant J. J. Aguirre, a Calipatria correctional sergeant, on November 16, 2005. (Compl. 4.)  Plaintiff contends that Aguirre failed to perform his duties as a correctional sergeant and appeals reviewer by not conducting an investigation into Martin's allegations.  (Pl.'s Opp'n 5.) Plaintiff argues that by failing to intervene, Defendant Aguirre affirmed Defendant Hurtado and Bugarin's retaliatory actions, thereby denying Plaintiff's liberty interests in an unbiased grievance procedure and meaningful review.  (Id.)

## II. LEGAL STANDARDS APPLICABLE TO DEFENDANTS' MOTION TO DISMISS

### A.    Rule 12(b)(6) Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999).  The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1974 (2007).  The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The question is not whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).
A dismissal under Rule 12(b)(6) is generally proper only where
there "is no cognizable legal theory or an absence of sufficient
facts alleged to support a cognizable legal theory." Navarro v.
Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica
Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

The Court need not accept conclusory allegations in the
complaint as true; rather, it must "examine whether [they] follow
from the description of facts as alleged by the plaintiff."
Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation
omitted); Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir.
1993); see also Cholla Ready Mix, 382 F.3d at 973 (citing Clegg v.
Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994))
(stating that on Rule 12(b)(6) motion, a court "is not required to
accept legal conclusions cast in the form of factual allegations
if those conclusions cannot reasonably be drawn from the facts
alleged[]"). "Nor is the court required to accept as true
allegations that are merely conclusory, unwarranted deductions of
fact, or unreasonable inferences." Sprewell v. Golden State
Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure
to state a claim, the Court may not generally consider materials
outside the pleadings. Schneider v. Cal. Dep't of Corr., 151 F.3d
1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire &
Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay
Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th
Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is
the complaint." Schneider, 151 F.3d at 1197 n.1. This precludes

consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2], at 12-90 (3d ed. 2008) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)(footnote omitted).").

But "[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).  The Court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002); Stone v. Writer's Guild of Am. W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).  Additionally, the Court may consider matters that are subject to judicial notice.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

These Rule 12(b)(6) guidelines apply to Defendants's Motion to Dismiss.

**B.   Standards Applicable to Pro Se Litigants**

Where a plaintiff appears in propria persona in a civil rights case, the Court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The

rule of liberal construction is "particularly important in civil rights cases." <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a <u>pro</u> <u>se</u> civil rights complaint, however, the Court may not "supply essential elements of claims that were not initially pled." <u>Ivey v. Bd. of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." <u>Id.</u>; <u>see also</u> <u>Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." <u>Jones</u>, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the Court must give a <u>pro</u> <u>se</u> litigant leave to amend his complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." <u>Noll v. Carlson</u>, 809 F.2d 1446, 1447 (9th Cir. 1987).  Even when leave to amend is granted, the Court must provide the plaintiff with a statement of the complaint's deficiencies before a <u>pro</u> <u>se</u> civil rights complaint may be dismissed. <u>Karim-Panahi</u>, 839 F.2d at 623-24.  This is "to ensure that the litigant uses the opportunity to amend effectively." <u>Eldridge v. Block</u>, 832 F.2d 1132, 1136 (9th Cir. 1987).  But where amendment of a <u>pro</u> <u>se</u> litigant's complaint would be futile, denial of leave to amend is appropriate. <u>See</u> <u>James v. Giles</u>, 221 F.3d 1074, 1077 (9th Cir. 2000).

**C.    Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

**III. MERITS OF DEFENDANTS' MOTION TO DISMISS**

**A.    Plaintiff's Request for Judicial Notice**

Martin filed a Request for Judicial Notice [doc. no. 19], wherein he requests that the Court take judicial notice of the following regulations and operation procedures:  (1) California Code of Regulations section 3084.1, which establishes an inmate's right to appeal departmental decisions; (2) California Code of Regulations section 3190, which concerns an inmate's right to possess personal property; (3) California Code of Regulations section 3191, which concerns the registration and disposition of an inmate's personal property ; (4) California Code of Regulations section 3144, which describes the procedures for inspecting an inmate's confidential mail; and (5) Calipatria State Prison Operational Procedure manual describing "Inmate Property Procedure."  (Pl.'s Req. for Judicial Notice 1-2.)

The Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

Evid. 201(b).  "A court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).

"Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"  <u>Toth v. Grant Trunk R.R.</u>, 306 F.3d 335, 349 (6th Cir. 2002) (quoting Fed. R. Civ. P. 201(b)) (finding district court did not abuse its discretion by taking judicial notice of certain regulations from the Code of Federal Regulations); <u>see also</u> <u>Whitington v. Sokol</u>, 491 F. Supp. 2d 1012, 1019 (D. Colo. 2007) (citations omitted) (taking judicial notice of regulations setting forth the Colorado Department of Corrections' administrative process).  Accordingly, the Court will take judicial notice of California Code of Regulations sections 3084.1, 3190, 3191, and 3144, attached to Plaintiff's Request for Judicial Notice as Exhibits One through Four.  The facts contained in these regulations are matters of public record and are not subject to reasonable dispute.  <u>See</u> <u>Bovarie v. Giurbino</u>, 421 F. Supp. 2d 1309, 1314 (S.D. Cal. 2006) (taking judicial notice of a section of the California Code of Regulations).

The Court will also take judicial notice of Exhibit Five, Calipatria State Prison Operational Procedure number 3004, because its authenticity is not questioned by any party and the facts contained therein are not subject to dispute.  <u>See</u> <u>Murray v. Terhune</u>, No. 02-CV-5978 AWI-DLB PC, 2007 U.S. Dist. LEXIS 46538, at *8-9 n.1 (E.D. Cal. June 27, 2007) (taking judicial notice of a section from the Pleasant Valley State Prison Operations Procedure

manual); <u>Gleave v. Graham</u>, 954 F. Supp. 599, 605 (W.D.N.Y. 1997)
(taking judicial notice of "Program Statements" issued by the
Bureau of Prisons); <u>Hodges v. Klein</u>, 421 F. Supp. 1224, 1233
(D.N.J. 1976) (taking judicial notice of written regulations of
New Jersey's Department of Corrections).

**B.   _Martin's First Amendment Retaliation Claim_**

"A prison inmate retains those first amendment rights that
are not inconsistent with his status as a prisoner or with the
legitimate penological objectives of the corrections system."
<u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  Prisoners' First
Amendment rights include the right to free speech and to petition
the government.  <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir.
2003); <u>Bradley v. Hall</u>, 64 F.3d 1276, 1278-79 (9th Cir. 1995); <u>see
also</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 487 n.11 (1995).
Nevertheless, "the constitutional rights that prisoners possess
are more limited in scope than the constitutional rights held by
individuals in society at large."  <u>Shaw v. Murphy</u>, 532 U.S. 223,
229 (2001).

The Constitution protects prisoners from deliberate
retaliation by government officials for the exercise of their
First Amendment rights.  See <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567
(9th Cir. 2005); <u>Vignolo v. Miller</u>, 120 F.3d 1075, 1077-78 (9th
Cir. 1997).  Because retaliation by prison officials may chill an
inmate's exercise of legitimate First Amendment rights,
retaliatory conduct is actionable regardless of whether it
otherwise constitutes misconduct.  <u>Rhodes</u>, 408 F.3d at 567 (citing
<u>Pratt v. Rowland</u>, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)); <u>see</u>
<u>Thomas v. Evans</u>, 880 F.2d 1235, 1242 (11th Cir. 1989)("The penalty

need not rise to the level of a separate constitutional violation.")  Even so, there must be a causal connection between the allegedly retaliatory conduct and the action that provoked the retaliation; a plaintiff must "show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision [to act]."  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

To withstand a motion to dismiss, a plaintiff suing prison officials pursuant to § 1983 for retaliation must allege facts that show the following:  (1) "[A] state actor took some adverse action against [the] inmate (2) because of (3) that prisoner's protected conduct, and . . . such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes, 408 F.3d at 567–68 (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000); Barnett v. Centoni, 31 F.3d 813, 815–16 (9th Cir. 1994)) (footnote omitted).

### 1.   Defendants Hurtado and Bugarin

In count one of his Complaint, Martin alleges that Defendants Hurtado and Bugarin seized his television set in retaliation for the filing of an administrative grievance against another peace officer.  (Compl. 3.)  In their Motion to Dismiss, Hurtado and Bugarin assert that Martin's Complaint fails to state a claim for retaliation because their "actions reasonably advanced a legitimate correctional goal and Plaintiff does not allege that Defendants Hurtado and Bugarin's actions chilled the exercise of his First Amendment rights."  (Defs.' Mem. P. & A. 5.)  Martin

1   argues that Defendants' seizure of the television did not advance

2   a legitimate correctional goal because the television had not been

3   impermissibly altered, so there was no nonretaliatory reason for

4   Defendants to seize it.  (Pl.'s Opp'n 7–8.)  Additionally,

5   Plaintiff claims he has properly alleged a chilling of his rights.

6   (Id. at 7.)

7           a.   Legitimate Correctional Goal

8       "Because a prisoner's First Amendment rights are necessarily

9   curtailed, . . . a successful retaliation claim requires a finding

10  that 'the prison authorities' retaliatory action did not advance

11  legitimate goals of the correctional institution or was not

12  tailored narrowly enough to achieve such goals.'"  Pratt v.

13  Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (quoting Rizzo v.

14  Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).  Accordingly, in order

15  to state a cognizable retaliation claim, a plaintiff must allege

16  that the defendant's retaliatory action did not serve a legitimate

17  penological purpose.  Id.; Barnett, 31 F.3d at 815–16 (citing

18  Rizzo, 778 F.2d at 532).

19      Defendants assert that Martin fails to state a claim for

20  retaliation because "[t]he confiscation of plaintiff's altered

21  television set clearly advanced the legitimate correctional goal

22  of ensuring the safety and security of the institution, other

23  inmates, the correctional officers, and prison staff members."

24  (Defs.' Mem. P. & A. 5.)  Calipatria State Prison regulations

25  prohibit inmates from possessing appliances that have been

26  altered, so Defendants claim they had an objectively legitimate

27  basis for confiscating the television.  (Id. at 7; Defs.' Reply

28  3.)

The Ninth Circuit has found that "preserving institutional order, discipline, and security are legitimate penological goals." Barnett, 31 F.3d at 816. Defendants argue that "objective legitimacy should be sufficient to defeat a prisoner's retaliation claim, even where there may be evidence of improper motive[.]" (Defs.' Mem. P. & A. 6 (citing Hartman v. Moore, 547 U.S. 250, 260 (2006).)

Nevertheless, a prison official cannot defeat a retaliation claim simply by pointing to "a general justification for a neutral process . . . ." Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003). "But, if, in fact, the defendants abused the . . . procedure as a cover or a ruse to silence and punish [the inmate] because he filed grievances, they cannot assert . . . a valid penological purpose, even though he may have arguably ended up where he belonged." Id. Once a plaintiff makes "a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of . . . ." Hartman v. Moore, 547 U.S. at 260 (citing Mt. Healthy, 429 U.S. at 287). An objective legitimacy test, argued for by Defendants, (Defs.' Mem. P. &. A. 6), may ultimately preclude recovery, but at this stage, the existence of a facially neutral prison regulation is not, by itself, sufficient to defeat a plaintiff's retaliation claim.

The Complaint asserts that after reading Martin's confidential legal correspondence, Defendants Hurtado and Bugarin "became openly hostile towards plaintiff and immediately seized plaintiff's authorized 13" color Zenith television." (Compl. 3.) It further claims that "Defendant's actions in seizing plaintiff's

television were done for the very purpose of 'retaliating' against
him for engaging in a protected activity, specifically, the filing
of an administrative inmate appeal complaint . . . ."  (Id.)
Finally, Martin alleges that "Defendants' acts . . . constitute
punishment imposed in an 'arbitrary and capricious' manner,
without good cause, for the very purpose of arousing anger,
resentment, anguish, and hostility . . . ."  (Id. at 3-4.)

By alleging that the Defendants' actions were "arbitrary and
capricious" and taken for the sole purpose of retaliating against
him, Plaintiff has sufficiently alleged the absence of a
legitimate correctional reason for the seizure of his television.
As the Ninth Circuit held in Rizzo, 778 F.2d at 532, "the
plaintiff has alleged that [the defendants'] actions were
retaliatory and were arbitrary and capricious.  He has thereby
sufficiently alleged that the retaliatory acts were not a
reasonable exercise of prison authority and that they did not
serve any legitimate correctional goal."

The California Code of Regulations provides that when an
inmate is in possession of a television, a staff member must seal
the outside surfaces with hot glue, so that all parts of the
appliance that could be used to access the television's interior
are sealed.  Cal. Code Regs. tit. 15, § 3190(k) (2008).  If an
inmate tampers with the glue seals, he may be subject to
disciplinary action and the television may be confiscated.  Cal.
Code Regs. tit. 15, § 3190(l) (2008).  When Defendants Hurtado and
Bugarin seized Plaintiff's television, they asserted that it was
confiscated because Martin had tampered with the glue seals.
(Compl. 5.)  Martin, however, contends that the glue seals were

satisfactory when he was transferred to Calipatria, so Defendants'
stated reason for confiscating the television was untrue.  (Pl.'s
Opp'n 8.)

The Court need not resolve the factual issue at this time.
In order to rule on Defendants' Motion to Dismiss, the Court must
determine whether, on the face of his Complaint, Plaintiff has
alleged the necessary elements to state a claim for retaliation.
See Bell Atlantic, ___ U.S. at ___, 127 S. Ct. at 1974; see also
Ramirez v. Arlequin, 447 F.3d 19, 24-25 (1st Cir. 2006) (refusing
to resolve the issue of whether the city had a legitimate interest
underlying its allegedly retaliatory actions because for purposes
of the 12(b)(6) motion to dismiss, all that mattered was the
allegations on the face of the complaint); Rhodes, 408 F.3d at
566, 568 (denying 12(b)(6) motion to dismiss because prisoner's
complaint properly alleged the defendant's actions were
retaliatory and did not advance legitimate penological goals).

In their Reply, Defendants argue that Exhibit 2 attached to
Plaintiff's Opposition demonstrates that "Defendants' actions were
based on legitimate penological goals of confiscating an altered
appliance." (Defs.' Reply 3.)  This document is not a part of, or
referred to in, Plaintiff's Complaint.  "As a general rule, 'a
district court may not consider any material beyond the pleadings
in ruling on a Rule 12(b)(6) motion.'" Lee v. City of Los Angeles,
250 F.3d 668, 688 (9th Cir. 2001)(quoting Branch v. Tunnell, 14
F.3d 449, 453 (9th Cir. 1994)).  Otherwise, the motion is treated
as one for summary judgment.  Id.  There are exceptions for
material which is properly submitted as part of the complaint and
"matters of public record" which may be judicially noticed.  Id.

at 688-89.  Exhibit 2, an inmate grievance form, is neither.  "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them."  Id. at 688(quoting Parrino v. FHD, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).

Even if Martin's grievance form meets this test, his claim survives.  Whether the defendants abused the property protocol as a ruse to punish Plaintiff for filing prior grievances against other correctional officers cannot be resolved on this Rule 12(b)(6) motion.  See Bruce v. Ylst, 351 F.3d at 1289.

Plaintiff's Complaint properly alleges that Defendants confiscated his television for no legitimate reason and only for the purpose of retaliating against him for exercising his First Amendment rights.  This is sufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6).  Accordingly, Defendants Hurtado and Bugarin's Motion to Dismiss is **DENIED** on this ground.

b.  Chilling the Exercise of First Amendment Rights

One of the necessary elements of a retaliation claim is that the defendants' retaliatory conduct chilled the plaintiff's exercise of his First Amendment rights.  Rhodes, 408 F.3d at 567-68.  But a plaintiff is not required to allege "a total chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim.  Speech can be chilled even when not completely silenced."  Id. at 568.  As the Ninth Circuit has recognized, "'[It] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff

persists in his protected activity . . . .'"   <u>Id.</u> at 569 (quoting

<u>Mendocino Envtl. Ctr. v. Mendocino County</u>, 192 F.3d 1283, 1300

(9th Cir. 1999)).

Accordingly, the correct inquiry in determining liability is

"'whether an official's acts would chill or silence a person of

ordinary firmness from future First Amendment activities.'"

<u>Mendocino Entl. Ctr.</u>, 192 F.3d at 1300 (quoting <u>Crawford-El v.</u>

<u>Britton</u>, 93 F.3d 813, 826 (D.C. Cir. 1996), <u>vacated</u>, 523 U.S. 1273

(1997)); <u>see also</u> <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 398 (6th

Cir. 1999) ("Retaliation against a prisoner is actionable if it is

capable of deterring a person of ordinary firmness from exercising

his or her right to access the courts.").

Defendants assert that Martin's Complaint fails to state a

claim for retaliation because he does not allege that Defendants'

conduct chilled or silenced him in any way. (Defs.' Mem. P. & A.

7; Defs.' Reply 4.)   The face of the Complaint does not contain

any allegation that Plaintiff's First Amendment rights were

chilled or that he was deterred from filing future grievances

against prison staff. (<u>See</u> Compl. 3-4.)   Nevertheless, Martin

contends that his Complaint properly alleges this element because,

"by alleging the Defendants' actions were retaliatory, arbitrary,

and capricious punishment for exercising his First Amendment

right[, Plaintiff] has thereby sufficiently alleged that

Defendants Hurtado and Bugarin's actions chilled this right via

the deprivation suffered." (Pl.'s Opp'n 7.)   He claims that by

seizing his television in retaliation for filing a prison

grievance, Defendants undermined Plaintiff's "only viable

mechanism to remedy prison injustices." (<u>Id.</u>)

The present case is similar to Rhodes v. Robinson, 408 F.3d
559.  Rhodes alleged that correctional officers seized and
"completely destroyed" his typewriter, and also seized his CD
player and twelve compact discs, in retaliation for grievances
that he filed.  Rhodes, 408 F.3d at 563-65.  After exhausting
administrative remedies, Rhodes filed a civil rights complaint in
federal court.  Id. at 565.  The defendants moved to dismiss the
complaint on the ground that the plaintiff would be unable to show
a chilling of his First Amendment rights, due to the fact that he
filed numerous complaints against staff and initiated litigation.
Id. at 566.

The Ninth Circuit disagreed.  It held that Rhodes's
allegations were sufficient to state a retaliation claim; Rhodes
did "not have to demonstrate that his speech was 'actually
inhibited or suppressed.'"  Id. at 569.  The court stated that if
it adopted the defendants' view, it would create a "perverse"
situation where a prisoner was required to exhaust administrative
remedies before filing suit in federal court to vindicate his
rights, yet by filing grievances to exhaust those remedies, the
prisoner would no longer be able to plead a claim for relief,
since he could not state that his speech was "chilled."  Id.

Rhodes's complaint had specifically alleged that the
defendants acted with intent to chill his First Amendment rights,
see id. at 566, but nevertheless, the court indicated that such an
allegation may not have been necessary:

> If Rhodes had not alleged a chilling effect,
> perhaps his allegations that he suffered harm would
> suffice, since harm that is more than minimal will
> almost always have a chilling effect.  Alleging harm and
> alleging the chilling effect would seem under the
> circumstances to be no more than a nicety.

Id. at 567-68 n.11 (citing Pratt, 65 F.3d at 807; Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989)).

Here, Plaintiff's Complaint is sufficient.  Martin alleges that Hurtado and Bugarin seized his television without justification and with the intent to retaliate against him for exercising his First Amendment right to file a grievance against a correctional officer.  (Compl. 3-4.)  Thus, he has alleged a concrete harm -- the confiscation of his television -- which is more than minimal.  The seizure of an inmate's personal property is the type of action that would chill the exercise of his First Amendment rights.  See Entler v. Bolinger, No. CV-05-5122-FVS, 2008 U.S. Dist. LEXIS 27523, at *18-19 (E.D. Wash. Mar. 21, 2008) (denying summary judgment and finding plaintiff sufficiently raised material issue of fact as to chilling effect where plaintiff had to perform extra duty and his property was confiscated in alleged retaliation because a jury could find that those consequences would chill the speech of a reasonable person); Rayford v. Omura, 400 F. Supp. 2d 1223, 1230-31 (D. Haw. 2005) (discussing Rhodes and stating that a plaintiff can recover for retaliation by proving either that he was actually harmed or that the defendant's actions would chill a person of ordinary firmness from speaking against defendant).  For these reasons, the Court concludes that Plaintiff has alleged all necessary elements to state a cause of action for retaliation, and Defendants Hurtado and Bugarin's Motion to Dismiss is **DENIED** on this ground.

//

//

### 2.   Defendant Aguirre

Defendant Aguirre is not named in count one of the Complaint, and his conduct is only set forth in count two, which describes Plaintiff's claim as a due process violation.  (Compl. 3-6.) Regardless of where they are located in the Complaint, the Court will construe Martin's allegations against Aguirre as also attempting to allege a First Amendment retaliation claim.

Nevertheless, Defendant Aguirre asserts that the Complaint fails to state a First Amendment retaliation claim against him because Martin cannot recover under § 1983 on a theory of supervisory liability, and there are no allegations that Aguirre participated in the allegedly retaliatory conduct.  (Defs.' Mem. P. & A. 7-8.)  Plaintiff argues this claim should not be dismissed because his Complaint alleges that Aguirre knew the other Defendants acted with retaliatory intent, but he failed to intervene, and therefore, Defendant Aguirre became complicit in the retaliation.  (Pl.'s Opp'n 10.)

Under section 1983 of the Civil Rights Act, a defendant cannot be held liable under a respondeat superior theory.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  But "[a]lthough there is no pure respondeat superior liability under § 1983, a supervisor is liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'"  Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)); see also King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987) (stating that state officials may be liable under § 1983 if "they play an

affirmative part in the alleged deprivation of constitutional rights[]"). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." <u>Ripson v. Alles</u>, 21 F.3d 805, 809 (8th Cir. 1994) (quoting <u>Jones v. City of Chicago</u>, 856 F.2d 985, 992 (7th Cir. 1988)).

Defendant Aguirre argues that Plaintiff fails to state a claim against him because Martin alleges liability based only on Aguirre's position as a supervisor:

> [T]here are no allegations that Defendant Aguirre witnessed or participated in the alleged viewing of Plaintiff's confidential correspondence, or the alleged resultant retaliatory act of confiscating Plaintiff's television. Rather, the Complaint specifically alleges Defendant Aguirre examined the television set and found it was tampered with, thereby justifying its confiscation.

(Defs.' Mem. P. & A. 7.)

The Complaint alleges that Defendant Aguirre is a Correctional Sergeant assigned to the Receiving and Release Unit at Calipatria. (Compl. 2, 5.) When Martin filed an inmate grievance complaining of the retaliatory actions of Defendants Hurtado and Bugarin, Plaintiff was interviewed by Defendant Aguirre for the first-level administrative response. (<u>Id.</u> at 5.) "Defendant Aguirre denied plaintiff's inmate appeal stating [sic] that he had personally inspected plaintiff's television and he noticed that the glue seals were tampered with." (<u>Id.</u> at 5–6.) Martin alleges that Defendant Aguirre "encourage[d], directed, ratified, and knowingly acquiesed [sic] in the actions of defendants Hurtado and Bugarin . . . ." (<u>Id.</u> at 6.)

//

1    Because Plaintiff is proceeding pro se, the Court must
2    construe his Complaint broadly, accepting as true all factual
3    allegations and reasonable inferences to be drawn from them.  See
4    Cholla Ready Mix, 382 F.3d at 973 (citing Karam, 352 F.3d at
5    1192).  Viewing the allegations in a light most favorable to
6    Martin, the Court finds that the Complaint sufficiently alleges a
7    First Amendment retaliation claim against Defendant Aguirre.  The
8    Complaint states that Aguirre knew Hurtado and Bugarin seized
9    Plaintiff's television with the intent to retaliate against him,
10   and Aguirre condoned that action by denying Martin's grievance.
11   The Complaint alleges that Defendant Aguirre took personal action;
12   it does not attempt to hold Aguirre liable merely for his
13   supervisory position.  See Hamilton v. Endell, 981 F.2d 1062, 1067
14   (9th Cir. 1992), abrogated on other grounds, Saucier v. Katz, 533
15   U.S. 194 (2201), (finding plaintiff sufficiently alleged personal
16   involvement where two prison officials reviewed and denied the
17   plaintiff's inmate appeals complaining of a decision to transfer
18   him in deliberate indifference to his medical needs).  Therefore,
19   Defendant's Motion to Dismiss a First Amendment retaliation claim
20   against Defendant Aguirre is **DENIED**.

21   **C.**   **Plaintiff's Fourteenth Amendment Due Process Claim**

22       In claim two of his Complaint, Martin asserts that he was
23   denied due process of law when Defendants Hurtado and Bugarin
24   seized his television without initiating a formal disciplinary
25   action against him, thereby denying Plaintiff the "minimal
26   disciplinary procedural due process protections" provided to state
27   inmates by California law.  (Compl. 5-6.)  He further alleges that
28   Defendant Aguirre violated Plaintiff's right to due process when

he denied the inmate grievance Martin submitted to complain about
Hurtado and Bugarin's actions.  (<u>Id.</u>)  Plaintiff also contends
that all three Defendants acted in concert.  (<u>Id.</u> at 6.)

The Due Process Clause of the Fourteenth Amendment protects
prisoners from being deprived of life, liberty, or property
without due process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556
(1974).  To invoke the Due Process Clause, Martin must establish
that he has a protected liberty or property interest at stake.
<u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).  This liberty
interest may arise from the Constitution or from state laws or
policies.  <u>Id.</u>; <u>Sandin</u>, 515 U.S. at 483–84.  "Procedural due
process rules are meant to protect persons not from the
deprivation, but from the mistaken or unjustified deprivation of
life, liberty, or property."  <u>Carey v. Piphus</u>, 435 U.S. 247, 259
(1978).

A plaintiff presenting a procedural due process claim must
allege two elements:  (1) the plaintiff had "a liberty or property
interest which has been interfered with by the State . . ." and
(2) the procedures employed to deprive the plaintiff of liberty or
property were constitutionally insufficient.  <u>Kentucky Dep't of</u>
<u>Corr. v. Thompson</u>, 490 U.S. 454, 460 (1989) (citation omitted);
<u>see also</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860–61 (9th Cir. 2003);
<u>Wright v. Riveland</u>, 219 F.3d 905, 913 (9th Cir. 2000).

**1.   Deprivation of Liberty Interest**

Defendants move to dismiss Plaintiff's due process claim
because they assert that Martin does not have a liberty interest
in an administrative grievance procedure.  (Defs.' Mem. P. & A. 8;
Defs.' Reply 5–6.)  They argue, "Plaintiff does not have a due

1   process right to file an inmate grievance and, as such, cannot
2   maintain a Due Process claim against Defendant Aguirre for denying
3   his inmate grievance."  (Defs.' Mem. P. & A. 8.)

4       Plaintiff contends he has a liberty interest in a grievance
5   procedure, which is established by the California Code of
6   Regulations.  (Pl.'s Opp'n 11.)  The specific regulation cited by
7   Martin provides that any inmate or parolee under the jurisdiction
8   of the California Department of Corrections "may appeal any
9   departmental decision, action, condition, or policy which they can
10  demonstrate as having an adverse effect upon their welfare."  Cal.
11  Code Regs. tit. 15, § 3084.1(a) (2008); (see Pl.'s Opp'n 11.)

12      "While a violation of a state-created liberty interest can
13  amount to a violation of the Constitution, not every violation of
14  state law or state-mandated procedures is a violation of the
15  Constitution."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.
16  1993) (citations omitted).  Accordingly, the fact that the
17  California Code of Regulations provides a procedure for inmates to
18  assert their grievances does not, in itself, create a federally
19  protected liberty interest.  "The simple fact that state law
20  prescribed certain procedures does not mean that the procedures
21  thereby acquire a federal constitutional dimension."  Id. (quoting
22  Vruno v. Schwarzwalder, 600 F.2d 124, 130-31 (8th Cir.
23  (1979)(internal quotations omitted)).  State-created procedures
24  for the processing of inmate complaints and the disciplining of
25  inmates do not create protected liberty interests that implicate
26  the protections of the Fourteenth Amendment.  Id. (citing Azeez v.
27  De Robertis, 568 F. Supp. 8, 10 (N.D Ill. 1982)).  "'A prison
28  grievance procedure is a procedural right only; . . . it does not

1  give rise to a protected liberty interest . . . .'" <u>Id.</u>  (quoting

2  <u>Azeez v. De Roberts</u>, 568 F. Supp. at 10).

3       The Ninth Circuit has held that inmates have "no legitimate

4  claim of entitlement to a grievance procedure." <u>Mann v. Adams</u>,

5  855 F.2d 639, 640 (9th Cir. 1988)(order on rehearing).  This

6  conclusion has also been consistently reached in other circuits:

7  "The courts of appeals that have confronted the issue are in

8  agreement that the existence of a prison grievance procedures

9  confers no liberty interest on a prisoner." <u>Massey v. Helman</u>, 259

10  F.3d 641, 647 (7th Cir. 2001) (discussing cases from the Fourth,

11  Seventh, Eighth, and Ninth Circuits).  Because Plaintiff does not

12  have an entitlement to a specific grievance procedure, he cannot

13  state a claim under § 1983 based on any alleged deficiencies in

14  the processing of his grievance by Defendant Aguirre.  <u>See</u> <u>Ramirez</u>

15  <u>v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003)(dismissing inmate's

16  claim that "disciplinary and appeals boards denied his request to

17  examine adverse witnesses in violation of his Due Process

18  rights[]".  The same is true for Plaintiff's claim that his

19  television was seized without the initiation of formal

20  disciplinary procedures.  (<u>See</u> Compl. 5.)

21       Under the framework established by the Supreme Court in

22  <u>Sandin v. Connor</u>, 515 U.S. at 484, Plaintiff can state a

23  cognizable due process claim only by alleging that state action

24  "restrains a state-created liberty interest in some 'unexpected

25  manner[]'" or imposed an "'atypical and significant hardship . . .

26  in relation to the ordinary incidents of prison life.'" <u>Ramirez</u>,

27  334 F.3d at 860 (quoting <u>Sandin</u>, 515 U.S. at 483-84).  The Supreme

28  Court has explained that "[t]hese [state-created liberty]

interests will be generally limited to freedom from restraint[,]"
for example, the transfer from a prison to a mental hospital or
the involuntary administration of psychotropic medications <u>Sandin</u>,
515 U.S. at 484 (citing <u>Vitek v. Jones</u>, 445 U.S. 480, 493 (1980);
<u>Washington v. Harper</u>, 494 U.S. 210, 221 (1990)).

Plaintiff's Complaint fails to state a procedural due process
claim because the deprivation of his television does not pose an
"atypical and significant hardship" when compared to "the ordinary
incidents of prison life." <u>See</u> <u>id.</u> Similar deprivations have
been found not to impose undue hardship on prisoners. <u>See, e.g.</u>,
<u>Cosco v. Uphoff</u>, 195 F.3d 1221, 1224 (10th Cir. 1999) (finding
prison policy that did not permit inmates to have hobby materials
in their cells did not impose atypical, significant deprivation
under <u>Sandin</u>); <u>Lyon v. Farrier</u>, 730 F.2d 525, 526-27 (8th Cir.
1984) (finding no due process violation where a painting belonging
to another inmate was confiscated and destroyed because prison
regulations did not allow inmate to possess another's property).
Plaintiff has not alleged facts sufficient to establish "a
dramatic departure from the basic conditions" of imprisonment.
<u>See</u> <u>Sandin</u>, 515 U.S. at 485. Thus, Martin fails to state a claim
for violation of his right to procedural due process.[2]

---

[2] It is not clear whether Plaintiff attempts to state a claim for
violation of substantive due process, but to the extent he does, his
allegations are similarly insufficient. Whereas procedural due process
requires that the state utilize certain procedures before depriving a
person of liberty or property, substantive due process imposes limits on
what the state can do, regardless of the procedures used. <u>Pittsley v.
Warish</u>, 927 F.2d 3, 6 (1st Cir. 1991) (citations omitted). A plaintiff may
assert a substantive due process claim by alleging either (1) the
deprivation of an identified liberty or property interest, or (2) state
conduct which "shocks the conscience." <u>Id.</u> (citations omitted). Martin
fails to establish a protected liberty or property interest that can
support a due process claim. He also fails to establish that the
confiscation of his television "shocks the conscience."

07cv0598 BTM (RBB)

### 2.   Deprivation of Property Interest

To the extent that Martin's Complaint attempts to state a
claim for the deprivation of property (i.e. his television)
without due process of law, his claim also fails.  "[W]here
deprivation of property resulted from the unpredictable negligent
acts of state agents, the availability of an adequate state
postdeprivation remedy satisfie[s] the requirement of due
process."  Taylor v. Knapp, 871 F.2d 803, 805 (9th Cir. 1989)
(citing Parratt v. Taylor, 451 U.S. 527, 538 (1981)).  This rule
also applies to "intentional, unauthorized actions."  Id. at 805-
06 (citing Hudson v. Palmer, 468 U.S. 517, 530-33 (1984)).

Martin's Complaint asserts that Defendants Hurtado and
Burgarin acted contrary to established policies when they seized
his television, and Defendant Aguirre also violated established
procedures by condoning their actions and denying Plaintiff's
grievance.  (See Compl. 3-6.)  Because he asserts that Defendants'
actions were unauthorized, rather than taken pursuant to
established policies, Martin could only state a claim for
deprivation of property if he alleged there were no state
postdeprivation remedies available to redress the harm.  The
result is the same whether the deprivation of property is
negligent or intentional, so long as adequate postdeprivation
remedies are available.  Hudson v. Palmer, 468 U.S. at 5336; see
also Parratt, 451 U.S. at 543 (finding failure to state a claim
where there was no allegation that postdeprivation procedures were
inadequate); Copeland v. Machulis, 57 F.3d 476, 479-80 (6th Cir.
1995) (same).  Plaintiff does not make that allegation.  Indeed,
California provides a postdeprivation remedy which the Ninth

Circuit has previously found to be adequate.  <u>Barnett v. Centoni</u>, 31 F.3d 813, 816-17 (9th Cir. 1994)(citing Cal. Gov't Code §§ 810- 895).  Accordingly, the Complaint fails to state a claim for the taking of property without due process of law.

For all these reasons, Plaintiff's Complaint fails to state a claim for deprivation of due process.  Defendants' Motion to Dismiss the due process claim alleged in count two of the Complaint is **GRANTED** without leave to amend.  It is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."  <u>Noll v. Carlson</u>, 809 F.2d at 1447.

## IV. CONCLUSION

The Court finds that Plaintiff has alleged enough facts to state a claim for retaliation under the First Amendment against Defendants Hurtado, Bugarin, and Aguirre, but his Complaint fails to state a due process claim against any Defendant.  Accordingly, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff will be permitted to proceed only on claim one of his Complaint for retaliation against Defendants Hurtado and Bugarin.  The due process violation alleged in claim two of the Complaint is **DISMISSED** against all Defendants.  The retaliation claim against Defendant Aguirre alleged in claim two may also proceed.

**IT IS SO ORDERED**.

DATED:   September 3, 2008

_Barry Ted Moskowitz_
Honorable Barry Ted Moskowitz
United States District Judge

07cv0598 BTM (RBB)